## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JUANITA BROWN, ET AL.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 16-2428-JAR-TJJ** |
| **PANHANDLE EASTERN PIPELINE COMPANY L.P.,** | |
| **Defendant.** | |

### MEMORANDUM AND ORDER

On June 26, 2017, Magistrate Judge James issued a Report and Recommendation (Doc.

51) recommending this Court partially grant Defendant's motion to dismiss for failure to state a

claim upon which relief may be granted (Doc. 36). Both parties filed objections (Docs. 53 & 54)

to the Recommendation. For the reasons explained below, the Court overrules the parties'

objections and adopts the Recommendation.

### I.      Factual Background

On June 19, 2014, a pipeline owned and operated by Defendant Panhandle Eastern

Pipeline Co., L.P., in Lyon County, Kansas, released natural gas condensate that allegedly

caused property and personal damage to the people, livestock, land, crops, trees, grasses, homes,

buildings, structures, equipment, air, and fresh water in the nearby community. The release

created a black, oily, smoke cloud that traveled north out of the pipeline and down Road K for at

least three miles. Defendant has estimated the volume of the release to be 1,300 gallons of

condensate. Residents within or near the plume path saw, smelled, sensed, and physically felt

the chemicals and compounds.

Plaintiffs comprise one entity of unspecified form, Brown Family Farms, and eleven

Lyon County residents: Juanita Brown, Gary Brown, Tyler Brown, Richard Hubert, Debra

Hubert, Jase Hubert, Stacy Dawn Benton, Donald Brown, Leo Brown, Ron Sellers, and Becky

Sellers (collectively "Individual Plaintiffs"). Benton sues on behalf of her minor child, DB. The

remaining individual Plaintiffs are adults suing on their own behalf.

## II.    Legal Standards

The standards the Court must employ when reviewing objections to a Report and

Recommendation are clear.[1] The Court will only review those portions of a Report and

Recommendation identified as objectionable.[2] The review of those identified portions is de novo

and the Court must "consider relevant evidence of record and not merely review the magistrate

judge's recommendation."[3]

## III.   Analysis

### A.  Defendant's Objection (Doc. 53)

#### 1.   Dismissal in Toto for Generalized Damages

Defendant argues that because Plaintiffs have not made any allegations about the type of

damages each of them has allegedly experienced, the First Amended Complaint ("FAC"), as a

whole, fails to state a plausible claim for relief. The Court agrees with Magistrate Judge James

that the FAC sets forth claims which, if proved, would entitle one or more Plaintiffs to damages,

thus dismissal in toto is not appropriate. Itemization of damages is not required to meet the

---

[1] 28 U.S.C. § 636(b)(1)(C); Fed. R Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

[2] *Armstrong v. Astrue*, No. 09-2405-CM, 2010 WL 3974785, at *1 (D. Kan. Sept. 30, 2010) ("When reviewing a magistrate judge's report and recommendation, the district judge reviews de novo the findings that pertain only to the objections.").

[3] *Griego v. Padilla*, 64 F.3d 580, 584 (10th Cir. 1995) (citation omitted).

pleading requirements of Rule 8(a).[4]  Defendant can request such an itemization through

discovery.[5]  Defendant's reliance upon *Reece v. AES Corp.*[6] is misplaced because Plaintiffs'

damages here are not limited to expressions of reasonable concern and statements of present

harm.  For these reasons, the Court overrules Defendant's damages objection and finds dismissal

of the FAC in toto unwarranted.

### 2.  Strict Liability for Abnormally Dangerous Activity (Count Five)

Count Five of the FAC alleges strict liability for engaging in abnormally dangerous

activity.  Plaintiffs articulated this claim as follows:

> Defendant, who carried on the abnormally dangerous activity of transporting,
> transferring, handling, and processing natural gas in populated areas, is subject to
> liability for harm to the person, land, and chattels of Plaintiffs resulting from such
> hazardous activities, even though Defendant may have exercised the utmost care
> to prevent the escape of and the contamination by the toxic natural gas condensate
> cloud.[7]

The Magistrate Judge recommended denying dismissal of Count Five because Defendant made a

single argument for dismissal, "namely that Plaintiff [did] not state facts showing any particular

[Plaintiffs'] person, land, or chattels were harmed as a result of allegedly abnormally dangerous

---

[4] *Fid. Nat'l Title Ins. Co. v. Radford*, No. 7:15-CV-00018, 2015 WL 1581678, at *3 (W.D. Va. Apr. 9, 2015) (finding plaintiff is not required to itemize its damages to meet the pleading requirements); *Adams v. Macon Cty. Greyhound Park, Inc.*, No. 3:11-CV-125-WKW, 2011 WL 5513210, at *4 (M.D. Ala. Nov. 10, 2011) (finding dismissal is not appropriate based upon argument that the Amended Complaint fails to specify the amount each Plaintiff lost to Defendants because argument steps into the realm of proof, not pleading); *Welch v. Centex Home Equity Co.,* 262 F. Supp. 2d 1263, 1271 (D. Kan. 2003) (denying motion to dismiss petition in its entirety for failure to describe or itemize damages after finding plaintiff has met the federal pleading requirements for damages at this stage of the litigation even though petition did not state a particular damage amount per claim); *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir. 1995) ("A plaintiff is not required to itemize his damages claims in his complaint.").

[5]. *Fid. Nat'l Title Ins. Co.*, 2015 WL 1581678 at *3 (stating defendants can request itemization through discovery); *Welch*, 262 F. Supp. 2d at 1271 (stating "[d]iscovery will permit plaintiff to obtain a better idea of her precise damages claims and the final pretrial order will be able to include a more particular description of the damages.").

[6] 638 F. App'x. 755, 775 (10th Cir. 2016).

[7] Doc. 31 at 14, ¶ XXV(B).

3

activities."[8]  The Magistrate Judge concluded that because ownership is not a prerequisite to asserting a claim for abnormally dangerous activity, "[it was] therefore plausible that Defendant's conduct in preventing toxic substances from escaping its pipeline caused Plaintiffs to sustain [personal and property damage]."[9]  Defendant objects to this recommendation, arguing Plaintiffs have not sufficiently alleged that Defendant was engaged in abnormally dangerous activity because the operation of a natural gas pipeline is not an abnormally dangerous activity.

The Court agrees with Magistrate Judge James' analysis.  In its motion to dismiss, Defendant challenged Count 5 for Plaintiffs' failure to state particularized harm and did not discuss what is or is not abnormally dangerous activity.  Plaintiffs' response and Defendant's reply also do not mention what entails abnormally dangerous activity.  Instead, Defendant raises this issue for the first time in its objection.

The Court declines to consider this issue at this time for two reasons.  First, the issue was not clearly raised and thus it has not been fully argued by the parties.  Second, although strict liability is an issue of law for the Court to decide, it is a fact intensive inquiry.[10]  Under Kansas law, the Court must consider the following factors in determining whether an activity is abnormally dangerous: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on;

---

[8] Doc. 51 at 15.

[9] *Id*. at 16.

[10] *Burdette v. Vigindustries Inc*., No. 10-1083-JAR, 2010 WL 11440784, at *3 (D. Kan. Aug. 4, 2010) ("Whether a given activity is abnormally dangerous is a question of law for the Court to decide.") (citing Restatement (Second) of Torts § 520, cmt. l).

and (f) extent to which its value to the community is outweighed by its dangerous attributes.[11]

At this stage, Plaintiffs have plausibly stated that Defendant engaged in an abnormally dangerous

activity by releasing natural gas condensate that contained chemical compounds harmful to

people and property.[12]  For these reasons, the Court overrules Defendant's objection and adopts

the Magistrate Judge's recommendation denying dismissal of Count 5.

### B.  Plaintiffs' Objection (Doc. 54)

#### 1.  Private Nuisance, Public Nuisance, Trespass, and K.S.A. 64-6203 Claims (Counts Two, Three, Four, and Nine, respectively)

Magistrate Judge James recommended dismissal of the Individual Plaintiffs' private

nuisance, public nuisance, trespass, and K.S.A. 64-6203 claims (Counts Two, Three, Four, and

Nine, respectively) because they failed to allege ownership of land in Lyon County.[13]  Plaintiffs

object to this recommendation, contending the plain language of the FAC demonstrates that they

own land in Lyon County.  They argue the sentence below alleged that they owned property

damaged by the toxic release:

> Plaintiffs file this Complaint, as having incurred damages arising out of the
> exposure to a toxic natural gas condensate which was released from the Panhandle
> Eastern, Inc.'s (hereinafter "Panhandle") natural gas pumping and processing
> station on June 19, 2014, and which **damaged the homes, property, and health
> of these Plaintiffs** and others similarly situated in Lyon County, State of Kansas.
> (Emphasis added).[14]

---

[11] Restatement (Second) of Torts §520 (1976); *Williams v. Amoco Prod. Co*., 734 P.2d 1113, 1123 (Kan. 1987) (adopting the Restatement (Second) of Torts §§ 519 and 520 to analyze claims involving strict liability for abnormally dangerous activities.).

[12] *Banks v. Ashland Oil Co*., 127 F. Supp. 2d 679, 682 (E.D. Pa. 2001) (holding that without a sufficient evidentiary record, the court cannot determine at motion to dismiss stage that Defendant's conduct constituted an abnormally dangerous activity).

[13] Doc. 51 at 9–11.

[14] Doc. 54 at 1–2.

Construed broadly, the above sentence does allow for an inference that all Plaintiffs own property in Lyon County. However, because Plaintiffs specifically set out "Brown Family Farms owning property in Lyon County, Kansas,"[15] but did not do the same for the Individual Plaintiffs, that inference is not reasonable as to the five individual Plaintiffs bearing the Brown surname.[16] And because it is unusual for a minor to own property, it would be unreasonable to infer that DB owned real property in Lyon County. Thus, an inference of ownership extends, at most, to the remaining five individuals (the Huberts and the Sellers). But in their response to the motion to dismiss and in their objection to the Recommendation, none of the Plaintiffs definitively states that they are landowners. The Court declines to infer land ownership when it is a definitive fact that can be alleged.

Because Plaintiffs' allegations of ownership lack conciseness and directness, the Court will adopt the Magistrate Judge's recommendation and dismiss the Individual Plaintiffs' private nuisance, public nuisance, trespass, and K.S.A. 64-6203 claims, since all of these claims require an ownership interest in land as an element.

### 2. Negligence Per Se (Count Seven)

To state a claim for negligence per se, Plaintiffs must plead the following elements: 1) violation of a statute, ordinance, or regulation; 2) the statute was adopted to protect the class of persons in which plaintiff is included and to protect against the type of harm which occurred as a result of its violation; and 3) the alleged violation was the proximate cause of plaintiff's injury.[17] The Magistrate Judge recommended dismissal of Count Seven because Plaintiffs did

---

[15] Doc. 31 at 3.

[16] *Cressman v. Thompson*, 719 F.3d 1139, 1159 (10th Cir. 2013) (explaining courts are not required to accept unreasonable inferences).

[17] *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1243 (D. Kan. 2002); *Pullen v. West*, 92 P.3d 584, 593 (Kan. 2004).

not identify the specific statute or regulation Defendant allegedly violated.[18]  In their objection,

Plaintiffs argue that Defendant possess most of the information to establish the violation of a

statute or regulation and urge this Court to allow them permission to amend the FAC after

discovery fleshes out the specific statute violated.  This argument is disingenuous.  Statutes and

regulations are public information, thus Plaintiffs should be able to identify a statute or

regulation they believe Defendant has violated and gives them an individual right of action

without the need for discovery.  The Court also rejects this argument because "[n]otice pleading

requirements suggest that plaintiff must plead the specific statute on which he bases his claim for

negligence per se."[19]  Without the specific statute, it is impossible to determine if the statute

creates an individual right of action.[20]  Because Plaintiffs have failed to identify a specific

statute, Defendant does not have fair notice of the claim.  For this reason, the Court overrules

Plaintiffs' objection and adopts the Magistrate Judge's recommendation to dismiss Count 7.[21]

### 3.  Emotional Distress Claims

#### a)  Intentional Infliction of Emotional Distress (Count Six)

To state a claim for intentional infliction of emotional distress (also known as outrage), a

plaintiff must plead four elements: 1) defendant's conduct was intentional or in reckless

disregard of plaintiff; 2) the conduct was extreme and outrageous; 3) a causal connection

---

[18] Doc. 51 at 8.

[19] *Holler*, 185 F. Supp. 2d at 1244.

[20] *Chappey v. Ineos USA LLC*, No. 2:08-CV-271, 2009 WL 790194, at \*3 (N.D. Ind. Mar. 23, 2009) (dismissing claim of negligence per se for plaintiff's failure to identify a specific statute, regulation, or ordinance to support said claim because without the specified statute, it was impossible to determine if the statute in question confers a private right of action).

[21] *Holler*, 185 F. Supp. 2d at 1244 (granting motion to dismiss claim for negligence per se for plaintiff's failure to plead specific statute on which he bases his claim).

between defendant's conduct and plaintiff's mental distress; and 4) plaintiff's mental distress was extreme and severe.[22] The Magistrate Judge recommended dismissal of Count Six because:

> The allegations in Count Six are wholly devoid of facts to support a claim. Instead, Plaintiffs recite the elements of the intentional tort but offer no facts showing how Defendant's conduct was intentional or in reckless disregard of Plaintiffs, in what manner the conduct was extreme and outrageous, or that any Plaintiff suffered extreme and severe mental distress. As such, the amended complaint contains nothing more than labels, conclusions, and a formulaic recitation of the elements of a cause of action.[23]

Plaintiffs' objection regarding dismissal of the emotional distress claims focus on the Magistrate Judge's failure to consider that wantonness is an exception to Kansas' physical injury rule. Physical injury is not a prerequisite for Count 6, an intentional infliction of emotional distress claim. Because Plaintiffs do not dispute the Magistrate Judge's formulaic conclusion as to Count Six, which encompassed other elements, they have abandoned that claim. The Court therefore adopts the Magistrate Judge's recommendation to dismiss Count Six.

### b) Negligent Infliction of Emotional Distress (Count Eight)

To state a claim for negligent infliction of emotional distress, a plaintiff must allege a physical injury that directly results from or accompanies the emotional distress caused by the defendant's negligence.[24] The Magistrate Judge recommended dismissal of Count 8 after stating:

> Plaintiffs' amended complaint alleges they experienced fear, fright and anguish, as well as emotional responses including concern for themselves, their loved ones, and their property. Plaintiffs also allege the materials to which they were exposed are carcinogenic and are known to cause damage to various body parts through skin and eye contact and inhalation. Specific to this count, Plaintiffs allege the location of the facility and its proximity to a large population of people should have made Defendant realize its conduct involved an unreasonable risk of causing

---

[22] *Valadez v. Emmis Commc'ns*, 229 P.3d 389, 394 (Kan. 2010).

[23] Doc. 51 at 12

[24] *Reynolds v. Highland Manor, Inc*., 954 P.2d 11, 13 (Kan. Ct. App. 1998).

distress which, if it occurred, would result in illness or bodily harm. But nowhere do Plaintiffs allege that any of them sustained any type of physical injury immediately after or in conjunction with their emotional responses to the release. The fact that Plaintiffs were exposed to carcinogenic materials does not translate into immediate injury (and one hopes such harm never materializes), and without such allegation Plaintiffs have not stated a plausible cause of action against Defendant for negligent infliction of emotional distress.[25]

Plaintiffs argue that wantonness is an exception to Kansas' physical injury rule and they alleged wantonness — "The release of the toxic natural gas condensate and its dangerous constituents was caused by the negligence, fault, recklessness, disregard, and wanton conduct of Defendant."[26] The Court rejects this argument because Plaintiffs' allegation of wantonness is conclusory.[27] "Wanton conduct is distinguished from a mere lack of due care by the fact that the actor realized the imminence of injury to others from his acts and refrained from taking steps to prevent the injury."[28] The FAC contains no allegations that Defendant knew a toxic leak was imminent, that it would cause injury to others, and that Defendant refrained from taking steps to prevent the injury.

Alternatively, Plaintiffs argue that by alleging the chemicals released were inherently injurious, it seems silly to require them to spell out their physical injuries.[29] Silly or not, that is the law. Kansas courts imposed the physical injury requirement to prevent plaintiffs from

---

[25] Doc. 51 at 13.

[26] Doc. 31 at 7, Part XVIII; Doc. 54 at 5.

[27] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (explaining courts may disregard conclusory statements in examining a complaint under Rule 12(b)(6)).

[28] *Anasazi v. United States*, No. 16-2227, 2017 WL 2264441, at *9 (D. Kan. May 23, 2017) (quoting *Bowman v. Doherty*, 686 P.2d 112, 118 (Kan. 1984)).

[29] Doc. 54 at 7. Plaintiffs request the Court take judicial notice of the Material Safety Data Sheets ("MSDS") to support their claim that the chemicals released by Defendants are toxic to humans and cause physical injuries to those exposed. The Court declines to take judicial notice of the MSDS because it is far from clear whether it contains facts that are generally known within a court's jurisdiction and not subject to reasonable dispute. Fed. R. Evid. 201(b).

recovering damages for feigned or trivial emotional distress.[30]  Physical injuries related to

exposure to chemicals are the kinds of "details the Plaintiff[s] should know and could properly

plead."[31]  Because the FAC does not allege physical injury immediately after or in conjunction

with Plaintiffs' emotional responses to the release, Plaintiffs have failed to state a plausible claim

for negligent infliction of emotional distress.  Accordingly, the Court adopts the Magistrate

Judge's recommendation to dismiss Count 8.

**IT IS THEREFORE ORDERED** that Magistrate Judge James' Report and

Recommendation (Doc. 51) is ADOPTED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 36) is

GRANTED IN PART and DENIED IN PART.  Count Six (intentional infliction of emotional

distress), Count Seven (negligence per se), and Count Eight (negligent infliction of emotional

distress) are DISMISSED with prejudice.  The Individual Plaintiffs' private nuisance, public

nuisance, trespass, and K.S.A. 64-6203 claims are also DISMISSED.  Count One (negligence),

Count Five (strict liability),and Brown Family Farms' private nuisance, public nuisance,

trespass, and K.S.A. 64-6203 claims (Counts Two, Three, Four, and Nine, respectively) survive

the motion to dismiss.

**IT IS SO ORDERED.**

Dated: September 1, 2017

                     S/ Julie A. Robinson
                     JULIE A. ROBINSON
                     UNITED STATES DISTRICT JUDGE

---

[30] *Reynolds v. Highland Manor, Inc.*, 954 P.2d 11, 17 (1998) (citations omitted).

[31] *Reece v. AES Corp.*, 638 F. App'x 755, 778 (10th Cir. 2016) (citing *Khalik*, 671 F.3d at 1194).